IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 12-CR-0199-006-CVE |
| ) | (15-CV-0055-CVE-PJC) |
| ORLANDO KEANE JORDAN, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Now before the Court is defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 499). Defendant argues that he received ineffective assistance of counsel at his sentencing hearing and that his guilty plea was involuntary. The government has filed a response (Dkt. # 507) arguing that defendant's plea agreement contains a waiver of post-conviction rights, that some of defendant's grounds for relief fall within the scope of his post-conviction waiver, and that other grounds are without merit. Defendant replies that the post-conviction waiver is unenforceable because his claims challenge the validity of his guilty plea or the waiver, and he alleges that he received a sentence in excess of the statutory maximum.

### I.

Defendant Orlando Keane Jordan and others were charged in a superseding indictment with conspiring to distribute and possess with intent to distribute at least 1,000 kilograms of marijuana, and the superseding indictment put defendant on notice that he was charged under 21 U.S.C. § 841(a)(1) and (b)(1)(A)(vii). Dkt. # 94. Under § 841(b)(1)(A), a defendant faces a statutory mandatory minimum sentence of 10 years and a possible maximum sentence of life imprisonment if convicted. A second superseding indictment (Dkt. # 157) was returned by a grand jury alleging

the same drug conspiracy charge. On June 10, 2013, defendant made his initial appearance in this Court and with W. Creekmore Wallace, II as his retained counsel. Dkt. # 225. The government filed a motion to continue the trial under the Speedy Trial Act, 18 U.S.C. § 3161 et seq., and many of the defendants, including Jordan, filed a response in support of the government's request. The Court granted the motion to continue and the trial was set for October 21, 2013. Dkt. # 230.

Defendant retained a second attorney, Elliot Crawford, and defendant changed his plea to guilty three days before the trial date.[1] Defendant was represented by Crawford at the change of plea hearing, and the parties advised the Court that defendant was changing his plea pursuant to a written plea agreement. Defendant stated that he had an opportunity to read the plea agreement and discuss it with Crawford, and he acknowledged that he was voluntarily changing his plea to guilty. Dkt. # 433, at 8-9. The Court advised defendant that he faced a statutory mandatory minimum sentence of 10 years and a statutory maximum sentence of life imprisonment if convicted. Id. at 10-11. Defendant acknowledged that Court could impose "any reasonable sentence not greater than the statutory maximum of life and not less than the statutory minimum of 10 years." Id. at 14. The Court reviewed the waiver of post-conviction rights with defendant, and the Court clarified with counsel for the government that no waiver of appellate rights was contained in the plea agreement.[2] Id. at 16. The Court engaged in the following colloquy with defendant concerning his waiver of post-conviction rights:

---

[1] Wallace did not withdraw from his representation of defendant, and both Wallace and Crawford represented defendant as the case proceeded.

[2] The plea agreement states that defendant "reserves the right to appeal from a sentence which exceeds the statutory maximum," but nowhere in the plea agreement does defendant actually give up his right to appeal. Dkt. # 317, at 3.

> THE COURT: Do you understand that you are knowingly and voluntarily agreeing to waive the right to collaterally attack your conviction and sentence pursuant to 28, U.S.C., Section 2255, except for claims based on ineffective assistance of counsel which challenge the validity of your guilty plea or your waiver of post-conviction rights contained in paragraph 3 of the plea agreement?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand that you are knowingly and voluntarily agreeing to waive the right to have your sentence modified pursuant to 18, U.S.C., Section 3582(c)(2)?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Do you understand that you are expressly acknowledging that Mr. Crawford has explained your appellate and post-conviction rights, that you understand those rights, and that you are knowingly and voluntarily waiving those rights as we just discussed?
>
> THE DEFENDANT: Yes, ma'am.

Id. at 17-18. As to sentencing matters, defendant acknowledged that he consented to judicial fact-finding as to sentencing, and that his attorney had discussed the role of aggravating factors that could enhance his sentence. Id. at 19.

The Court asked defendant to explain what he did to commit the offense of drug conspiracy, and he stated that he sold marijuana between 2007 and 2012. Id. at 24. He identified Moises Yanez as a co-conspirator and he admitted that he and Yanez conspired to possess with intent to distribute at least 1,000 kilograms of marijuana. Id. at 25. Defendant stated that he voluntarily participated in the conspiracy, and he admitted that he sold marijuana for Yanez and Oscar Fuentes-Diaz. Specifically, defendant would receive drugs from Yanez and Fuentes-Diaz and sell the drugs, and he would return some of the money from the sale to Yanez and Fuentes-Diaz. Id. at 26. Counsel for the government represented that defendant's admissions were consistent with her view of the evidence, and the Court inquired into possible sentencing enhancements that could apply under the

United States Sentencing Guidelines. The government stated that it did not intend to seek an enhancement for defendant's role in the offense, and the Court advised defendant that he had admitted to the requisite drug quantity to establish his guilt for the charged offense. Id. at 28. However, counsel for the government noted that there were a "couple of incidences of what witnesses have described as intimidation" and that there could be a firearms enhancement. Id. Defendant thereafter pled guilty. The Court found that defendant's plea was knowingly and voluntarily made and the Court accepted his plea of guilty. Id. at 31-32. A presentence investigation report (PSR) was prepared following the change of plea hearing, and defendant's total offense level was 36, and he had a criminal history category of VI. Defendant's advisory guideline range was 324 to 405 months imprisonment. The total offense level of 36 included a two level enhancement for use of a firearm and a two level enhancement for obstruction of justice based on evidence that defendant had intimidated Chastity Slape and Amanda Sweeney to discourage them from contacting law enforcement officers.

Defendant objected to the PSR and argued that his sentence should not be enhanced for possession of a firearm and obstruction of justice based on the alleged intimidation of Slape. Dkt. # 373, at 17-22. The Court held a sentencing hearing on February 18, 2014, and gave defendant a final opportunity to accept responsibility before proceeding with the evidentiary portion of the sentencing hearing. Counsel for the government agreed to recommend that defendant receive a third point reduction for acceptance of responsibility if he admitted to acts of intimidation, including the use of a firearm, against Slape, and counsel outlined Slape's proposed testimony. Dkt. # 415, at 4-5. Defendant refused the government's offer and refused to admit to threatening Slape. Id. at 6. An evidentiary hearing followed. Slape testified that she and her husband transported marijuana for

Yanez, and one of the persons who picked up shipments of marijuana was defendant. Id. at 14-16. In April or May 2011, Slape's husband was arrested and Yanez sent defendant and two other men to Slape's home. Defendant grabbed Slape and she fell onto a couch, and defendant put a gun to her head. Id. at 19. Defendant told Slape not to cooperate with law enforcement in any way or her family would be harmed. Id. at 19. Slape went to the police station and filed a report about the incident. Id. at 20. Slape was eventually put in contact with two special agents of the Federal Bureau of Investigation and she became a confidential informant. Id. at 21. Defendant testified at the sentencing hearing and admitted that he pled guilty to being part of a conspiracy to distribute more than 1,000 kilograms of marijuana, but he claimed that he had personally distributed only about 500 or 600 pounds of marijuana. Id. at 60-61. Defendant claimed that he had never seen Slape before and he did not recognize her when she testified. He testified that he never put a gun to Slape's head and he claimed that he did not know where she lived in April or May 2011. Id. at 71. Defendant denied that he ever carried a firearm. Id. at 75. After the evidentiary portion of the sentencing hearing concluded, the Court ruled on defendant's objections to the PSR. Id. at 81. The Court considered Slape's testimony and other evidence and found that he "directly intimidated and threatened both [Slape] and [Sweeney]," and a two-level enhancement for obstruction of justice was appropriate. Id. at 82. The Court also overruled defendant's objection to a two level enhancement for use of a firearm and found that he had used a firearm to threaten and intimidate witnesses. Id. at 83. However, the Court took into account that enhancing defendant's sentence for obstruction of justice and use of a firearm essentially punished the same conduct twice and varied downward two levels to account for this. Id. at 89. The Court also found that a variance was appropriate to avoid an unnecessary sentencing disparity and varied downward two additional levels. Id. This

resulted in a total offense level of 32 and, combined with a criminal history category of VI, defendant's advisory guideline range was 210 to 262 months. Id. The Court sentenced defendant to 210 months imprisonment and a five year term of supervised release. Id. at 90-91.

Defendant filed a notice of appeal (Dkt. # 406) and he challenged the procedural and substantive reasonableness of his sentence. The Tenth Circuit Court of Appeals noted that defendant acknowledged at the change of plea hearing that he faced a ten year statutory mandatory minimum sentence. Dkt. # 485, at 4. The Tenth Circuit affirmed the imposition of enhancements for obstruction of justice and use of a firearm and found that a sentence of 210 months imprisonment was reasonable. The Tenth Circuit's decision was issued on October 17, 2014 and defendant did not file a petition for writ of certiorari, and his conviction became final on January 15, 2015. On February 2, 2015, defendant filed a § 2255 motion (Dkt. # 499) and brief in support (Dkt. # 500), and his motion is timely under § 2255(f)(1).

## II.

Defendant argues that he received ineffective assistance of counsel in connection with his guilty plea and his sentencing hearing. He claims that his attorneys were ineffective for failing to require particularized factual findings as to the drug quantity used to calculate his sentence (ground one), and he argues that the drug quantity should have been found by a jury (ground two). Defendant claims that his attorneys were ineffective for advising him to sign a plea agreement with an "unethical" waiver of post-conviction rights (ground three), and he asserts that his attorneys gave him misleading advice about the applicability of a statutory mandatory minimum sentence (ground four). The government has filed a response to defendant's motion and argues that grounds one and two fall within the scope of defendant's post-conviction waiver. Dkt. # 507, at 16-19. As to

grounds three and four, the government responds that post-conviction waivers are valid and ethical, and defendant's alleged confusion as to the statutory mandatory minimum sentence does not show that his attorneys were ineffective. Id. at 21-26.

### A.

The government argues that defendant's plea agreement contains a waiver of certain post-conviction rights and that defendant's grounds one and two fall within the scope of the waiver. The Tenth Circuit has established a three-part test to determine if an appellate and post-conviction waiver is enforceable:

> (1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice . . . .

United States v. Hahn, 359 F.3d 1315, 1325 (10th Cir. 2004). In determining the scope of an appellate or post-conviction waiver, a court must strictly construe the waiver in favor of the defendant and evaluate the scope of the waiver "in light of the defendant's reasonable understanding at the time of the guilty plea." United States v. Novosel, 481 F.3d 1288, 1291 n.1 (10th Cir. 2007). Challenges to the voluntariness of a guilty plea generally do not fall within the scope of a waiver. United States v. Weeks, 653 F.3d 1188, 1197 n.4 (10th Cir. 2011). Hahn requires the consideration of two factors in considering whether a defendant knowingly and voluntarily agreed to an appellate and post-conviction waiver. First, the court "examine[s] whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily." Hahn, 359 F.3d at 1325. Second, the guilty plea must be the result of an adequate colloquy under Fed. R. Crim. P. 11. Id. A miscarriage of justice may result "[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the

waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful. Id. at 1327 (quoting United States v. Elliot, 264 F.3d 1171, 1173 (10th Cir. 2001)). A defendant may not avoid enforcement of a waiver under the "otherwise unlawful" exception based on alleged errors in the calculation of his sentence, because this exception is focused on the fairness of the proceedings, rather than result of the proceedings. United States v. Smith, 500 F.3d 1206, 1213 (10th Cir. 2007). A miscarriage of justice does not occur when a defendant receives a sentence higher than he expected if that sentence does not exceed the statutory maximum. United States v. Green, 405 F.3d 1180, 1194 (10th Cir. 2005) (courts should consider the statutory maximum, not the defendant's anticipated sentence under the United States Sentencing Guidelines, to determine if a miscarriage of justice has occurred). The defendant bears the burden to show that a miscarriage of justice has occurred. United States v. Maldonado, 410 F.3d 1231, 1233-34 (10th Cir. 2005).

As to the first Hahn factor, the government argues that grounds one and two of defendant's § 2255 motion fall within the scope of his post-conviction waiver. Grounds one and two of defendant's § 2255 motion challenge his attorneys' performance during sentencing proceedings. Defendant claims that his attorneys failed to object to the lack of particularized findings as to drug quantity (ground one) and that his attorneys did not raise an argument based on the Supreme Court's decision in Alleyne v. United States, 133 S. Ct. 2151 (2013) (ground two). There is no reasonable way to view these grounds as challenging the validity of defendant's guilty plea or the validity of the post-conviction waiver, and grounds one and two of defendant's § 2255 motion fall within the scope of the waiver of post-conviction rights contained in the plea agreement. The second Hahn factor is whether defendant knowingly and voluntarily waived his post-conviction rights. The Court

has reviewed the transcript of the change of plea hearing, and it is clear that the Court reviewed the post-conviction waiver with defendant and he stated that he understood the rights he was giving up by proceeding with a plea agreement. Dkt. # 433, at 17-18. The plea agreement states that "defendant expressly acknowledges that counsel has explained his appellate and post-conviction rights; that defendant understands his rights; and that defendant knowingly and voluntarily waives those rights . . . ." Dkt. # 317, at 3. This page of the plea agreement was initialed by defendant and he signed the plea agreement. The Court finds that defendant knowingly and voluntarily waived certain post-conviction rights. Finally, the Court must consider whether enforcement of the post-conviction waiver would result in a miscarriage of justice. Defendant argues that received a sentence based on a drug quantity higher than any quantity that he admitted to personally distributing, and he claims that should have been sentenced based on a quantity of 500 to 600 pounds of marijuana that he admitted to at the sentencing hearing. Dkt. # 508, at 1-2. The record is clear that defendant admitted to knowingly and voluntarily participating in a conspiracy with the objective of possessing with intent to distribute and distributing at least 1,000 kilograms of marijuana. Dkt. # 317, at 7; Dkt. # 318, at 3; Dkt. # 433, at 25. This amount was used to determine defendant's advisory guideline range and the PSR noted that this was a "conservative" estimate of the amount of marijuana distributed due to defendant's participation in the conspiracy. Defendant was sentenced based on the drug quantity to which he admitted at his change of plea hearing, and no miscarriage of justice will result if the post-conviction waiver is enforced. Grounds one and two of defendant's § 2255 motion are dismissed based on the waiver of post-conviction rights contained in defendant's plea agreement.

**B.**

Defendant argues that his attorneys advised him to sign an unethical waiver of post-conviction rights (ground three) and that he received inaccurate advice about his sentence (ground four). The government responds that defendant's waiver of post-conviction rights is valid and enforceable, and defendant cannot show that he was prejudiced by any inaccurate or misleading advice he received from his attorneys concerning his sentence.

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689.

To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993). In Glover v. United States, 531 U.S. 198, 199 (2001), the Supreme Court held that "any amount of actual jail time has Sixth Amendment

significance." Thus, the prejudice prong of the Strickland test does not require that any increase in sentence must meet a standard of significance. See United States v. Horey, 333 F.3d 1185, 1187-88 (10th Cir. 2003).

Defendant argues that the United States Department of Justice (DOJ) has issued a memorandum that it will no longer ask defendants to waive their right to bring ineffective assistance of counsel claims as part of plea negotiations, and he claims that enforcement of the post-conviction waiver in his plea agreement would be unethical. On October 14, 2014, James M. Cole, Deputy Attorney General for DOJ, issued a memorandum to all federal prosecutors concerning DOJ's policy on waivers of post-conviction rights. Dkt. # 508, at 9. The memorandum states that courts have recognized that such waivers are "legal and ethical," but it was adopting a uniform policy that federal prosecutors should no longer seek a waiver of a defendant's right to bring claims of ineffective assistance of counsel in negotiating a plea agreement. Id. The memorandum states that prosecutors should decline to enforce existing waivers of post-conviction rights "when defense counsel rendered ineffective assistance resulting in prejudice or when the defendant's ineffective assistance claim raises a serious debatable issue that a court should resolve." Id. The memorandum "embodies a change in policy, not a change in law," and the law is clearly established that waivers of appellate and post-conviction rights are constitutional if made knowingly and voluntarily. United States v. Taghon, 2016 WL 5247923 (N.D. Ind. Sep. 21, 2016). The new policy adopted by DOJ does not prohibit the enforcement of existing post-conviction waivers, but prosecutors retain discretion to decline to enforce a post-conviction waiver in individual cases. Demello v. United States, 623 F. App'x 969, 972-73 (11th Cir. Aug. 7, 2015) (noting that the government had declined

to enforce post-conviction waivers based on the October 14, 2014 memorandum but recognizing that existing waivers could be enforced at the discretion of the government).

In this case, the government has sought to enforce the waiver of post-conviction rights contained in the plea agreement, but that does mean that defendant's attorneys performed deficiently by advising defendant to sign a plea agreement containing a waiver of his right to file certain ineffective assistance of counsel claims. When defendant pled guilty, broad waivers of the right to bring ineffective assistance of claims were regularly included in plea agreements and this was one of the few bargaining chips that a criminal defendant had when negotiating a plea agreement. United States v. Garst, 2015 WL 631402, *4 (D. Kan. Feb. 13, 2015). The change in DOJ policy does not render existing post-conviction waivers invalid or suggest such waivers are unethical, and it simply means that the DOJ will not seek such waivers in the future and it may decline to enforce existing waivers in some cases. Defendant cites United States ex rel. United States Attorneys for the Eastern and Western Districts of Kentucky v. Kentucky Bar Ass'n, 439 S.W.3d 136 (Ky. 2014), in which the Kentucky Supreme Court found that it was professional misconduct for an attorney defending a client in federal court to advise a client to accept a plea agreement containing a waiver of the right to file ineffective assistance of counsel claims and for a prosecutor to include such a waiver in a plea agreement. Id. at 153-58. The decision was based on ethical rules promulgated by the Kentucky Bar Association, and it is not binding on this Court nor does it tend to support a finding that waiver of post-conviction rights agreed to by defendant was unethical or invalid. Defendant specifically reserved the right to bring ineffective assistance of counsel claims challenging his guilty plea and the waiver of post-conviction rights contained in the plea agreement, and the waiver of post-conviction rights fully complies with United States v. Cockerham, 237 F.3d

1179 (10th Cir. 2001). The Court finds that defendant's attorneys acted reasonably by advising defendant to sign a plea agreement containing a waiver of his right to bring certain ineffective assistance of counsel claims, and ground three of defendant's § 2255 motion is denied.

In ground four of his § 2255 motion, defendant argues that his attorneys provided ineffective assistance of counsel by advising him that his sentence would be determined based "on the drug quantity that he personally admitted to," and he claims that he would have gone to trial if he had known that he was facing a statutory mandatory minimum sentence of 10 years. Dkt. # 500, at 13-15. Defendant's argument fails for two reasons. First, the Court advised defendant at the change of plea hearing that he would be subject to a statutory mandatory minimum sentence of 10 years. The plea agreement and petition to enter plea of guilty signed by defendant clearly state that he was aware that he would receive a sentence of at least 10 years and up to life imprisonment. Dkt. # 317, at 9 ("The defendant acknowledges that under Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vii) the minimum mandatory statutory sentence is ten (10) years imprisonment . . ."); Dkt. # 318, at 3 ("I have been informed and understand that, pursuant to Title 21, Section 841(b), a plea of GUILTY will subject me to a statutory mandatory minimum sentence of at least ten (10) years imprisonment."). Both the Court and defendant's attorneys advised defendant that he was facing a 10 year mandatory minimum sentence, and he was clearly aware of this fact when he entered his guilty plea. Second, even if the Court were to assume that he received incorrect advice about his mandatory minimum sentence, a "miscalculation or erroneous sentence estimation by defense counsel is not a constitutionally deficient performance rising to the level of ineffective assistance of counsel." United States v. Gordon, 4 F.3d 1567, 1570 (10th Cir. 1993). A guilty plea may be involuntary if an attorney misrepresents the consequences of the plea, but a court reviewing

a claim of ineffective assistance of counsel may consider the record of the change of plea hearing to evaluate whether defendant was on notice of the punishment he faced by proceeding with a guilty plea. See United States v. Rhodes, 913 F.2d 839 (10th Cir. 1990). As the Court has noted, defendant was advised by the Court and his attorneys that he would receive a sentence of at least 10 years imprisonment, and he was not given misleading advice about the sentence he would face if he changed his plea. Defendant's sentence was calculated using the drug quantity to which he admitted at the change of plea hearing, and the Court used this "conservative" drug quantity in determining defendant's sentence. Defendant cannot establish that his guilty plea was involuntary based on allegedly inaccurate advice provided by his attorneys concerning his sentence, and ground four of defendant's § 2255 motion is denied.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 499) is **dismissed in part** and **denied in part**: grounds one and two are dismissed based on defendant's post-conviction waiver, and grounds three and four are denied. A separate judgment is entered herewith.

**DATED** this 5th day of October, 2016.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE